FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2013 MAR 21  PM 3: 51

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE, FLORIDA

| | |
|---|---|
| CABLEVIEW COMMUNICATIONS OF JACKSONVILLE, INC., a Florida corporation,<br><br>Plaintiff,<br><br>v.<br><br>TIME WARNER CABLE SOUTHEAST LLC a/k/a TIME WARNER CABLE ENTERPRISES LLC f/k/a TIME WARNER ENTERTAINMENT COMPANY, L.P. a/k/a TIME WARNER ENTERTAIMENT-ADVANCE/NEWHOUSE PARTNERSHIP d/b/a TIME WARNER CABLE,<br><br>Defendant. | Case No.:<br><br>3:13-CV-306-J-34 JRK |

## COMPLAINT

Plaintiff, CABLEVIEW COMMUNICATIONS OF JACKSONVILLE, INC. ("Cableview"), sues Defendant, TIME WARNER CABLE SOUTHEAST LLC a/k/a TIME WARNER CABLE ENTERPRISES LLC f/k/a TIME WARNER ENTERTAINMENT COMPANY, L.P. a/k/a TIME WARNER ENTERTAINMENT-ADVANCE/NEWHOUSE PARTNERSHIP, d/b/a TIME WARNER CABLE ("Time Warner"), and states as follows:

### PARTIES, JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to title 28 U.S.C. § 1332, as this is an action for damages in excess of $75,000, exclusive of interest, costs, and attorneys' fees.

2. Further, there is diversity of citizenship, as Cableview is a Florida corporation with its principal place of business in Jacksonville, Florida, and Time Warner is a Delaware limited liability company with its principal place of business in Charlotte, North Carolina.

3. Venue is properly vested in this Court under 28 U.S.C. § 1391, as the causes of action against Time Warner accrued in Duval County, Florida.

## FACTUAL BACKGROUND

### Cableview, Time Warner, Duke Power: The McClarty Action

4. At all times relevant to the matters alleged herein, Cableview was engaged in the business of cable television installation—offering video, modem and telephone installation services, multi-dwelling unit installation services, and drop bury and construction services for cable television companies in various markets throughout Florida, North Carolina, Ohio, Texas and Virginia.

5. Cableview entered into an agreement with Time Warner on or about July 19, 2004 to provide cable television installation services for Time Warner in the Greensboro, North Carolina area (the "Installation Agreement"). A true and correct copy of the Installation Agreement is attached hereto as **Exhibit "A."**

6. James McClarty ("McClarty") was employed by Cableview as a cable installation technician in the Greensboro, North Carolina area, providing services to Time Warner pursuant to the Installation Agreement.

7. On or about June 18, 2008, McClarty was injured when the utility pole upon which he was stringing cable television line collapsed. McClarty filed a worker's compensation claim against Cableview, which Cableview, in turn, tendered to its worker's compensation insurance carrier.

8. The worker's compensation claim made by McClarty against Cableview was settled by Cableview's worker's compensation insurance carrier.

9. Subsequent to the settlement between McClarty and Cableview, on July 21, 2010, McClarty filed an action for negligence and negligence *per se* against Duke Energy Carolinas, LLC ("Duke Power"), in the General Court of Justice, Superior Court Division for Durham County, North Carolina (the "McClarty Action").

10. Duke Power was the owner of the subject utility pole and had previously granted access for use of the pole to Time Warner pursuant to a utility pole attachment agreement. In McClarty's Complaint, he alleged that Duke Power was responsible for the condition of and for maintenance of the utility pole involved in his injuries.

11. Upon information and belief, Duke Power tendered the McClarty Action to Time Warner for defense and indemnification pursuant to the utility pole attachment agreement, and Time Warner voluntarily accepted the tender from Duke Power.

12. By correspondence dated September 23, 2010, counsel for Time Warner tendered the McClarty Action to Cableview for defense and indemnification allegedly pursuant to the Installation Agreement. In addition to making the tender directly to Cableview, Time Warner also made the tender to First Mercury Insurance Company ("First Mercury") allegedly pursuant to the contract of insurance providing for general liability coverage issued Mercury by First to Cableview (the "Policy"), naming Time Warner as an additional insured.

13. Upon receipt of the September 23, 2010 correspondence by Cableview on September 27, 2010, Cableview immediately forwarded the same to Brown & Brown of Florida, Inc. ("Brown & Brown"), Cableview's insurance agent. Brown & Brown, in turn, forwarded the same to First Mercury for defense and coverage review.

14. By correspondence to counsel for Time Warner dated October 28, 2010, First Mercury denied defense and coverage under the Policy on behalf of both Cableview and Time

Warner, stating that the McClarty Action did not fall within Cableview's contractual indemnification obligations to Time Warner under the Installation Agreement. A true and correct copy of the October 28, 2010 correspondence is attached hereto as **Exhibit "B."**

15. Upon information and belief, after acceptance of the tender from Duke Power and receipt of the letter of rejection of coverage from First Mercury, Time Warner voluntarily defended Duke Power and ultimately settled the McClarty Action on behalf of Duke Power without any additional demand or notice to Cableview.

16. Indeed, Time Warner had no further communication with Cableview regarding the McClarty Action until February of 2012.

## The FTS USA, LLC Transaction

17. FTS USA, LLC ("FTS") is a Delaware limited liability company with its principal place of business in Blue Bell, Pennsylvania. Like Cableview, FTS is engaged in the business of cable television installation services for cable television providers.

18. Late in 2011, FTS contacted the officers of Cableview regarding the possibility of acquiring Cableview and its affiliated companies. Thereafter, FTS and Cableview executed a series of Letters of Intent that outlined the evolving terms of the transaction that would ultimately be incorporated into a final Asset Purchase Agreement.

19. Additionally, during this period of time, FTS conducted its due diligence investigation, which included asset examination and visits to Cableview's field operations, including Cableview's operations servicing Time Warner.

20. Early in 2012, FTS and Cableview jointly informed Time Warner of the possibility of FTS acquiring Cableview. Indeed, the Installation Agreement provides that written

consent is required for any assignment of the duties or obligations thereunder. See (Exhibit A, ¶ 21). At that time, Time Warner gave its verbal consent to the Cableview-FTS transaction.[1]

21.   Based upon Time Warner's clear expression of support for the Cableview-FTS transaction, Cableview continued to negotiate the final terms of the Asset Purchase Agreement with FTS.

22.   Ultimately, FTS and Cableview entered into an Asset Purchase Agreement dated March 2, 2012, through which FTS acquired substantially all of the assets of Cableview, including, but not limited to, Cableview's installation agreements with cable providers such as Time Warner.

23.   As consideration for the purchase of Cableview's assets, FTS agreed to pay Cableview $500,000.00 at the close of the transaction and an additional $1,900,000.00 within five business days of FTS's consummation of appropriate financing (the "Deferred Fixed Compensation"), with additional potential consideration paid to Cableview based upon revenues and profit generated by the Cableview assets acquired by FTS.

**Time Warner's Actions Prior to the Close of the Cableview-FTS Transaction**

24.   During the due diligence and negotiation periods, but prior to the final execution of the Asset Purchase Agreement between Cableview and FTS, Time Warner engaged in settlement discussions with McClarty and ultimately settled the McClarty Action on behalf of Duke Power without any notice to Cableview.

---

[1] Also at that time, Time Warner made Cableview aware of the fact that FTS had previously attempted to acquire another of Time Warner's service providers. By virtue of that prior unsuccessful transaction, to which Time Warner consented, FTS was a known commodity to Time Warner, and Time Warner was comfortable with FTS assuming Cableview's responsibilities under the Installation Agreement.

25. Subsequent to settlement with McClarty, on February 17, 2012, Time Warner filed an Application and Order Extending Time to File Complaint against Cableview (the "Application") allegedly pursuant to Rule 3 of the North Carolina Rules of Civil Procedure. A true and correct copy of the Application is attached hereto as **Exhibit "C."** Time Warner forwarded to Cableview the Application and subpoenas issued on February 17, 2012 via facsimile.

26. The Application granted Time Warner leave to file a complaint against Cableview until March 8, 2012, for what Time Warner alleged were violations of Cableview's contractual indemnification obligations to Time Warner in connection with the McClarty Action.

27. The Application filed by Time Warner was the first communication Cableview received from Time Warner regarding indemnification obligations under the Installation Agreement in connection with the McClarty Action since the September 23, 2010 correspondence that Cableview forwarded to Brown & Brown and ultimately to First Mercury.

28. After receipt of the Application, Cableview, pursuant to its pre-closing disclosure obligations to FTS, amended the addendums to the Asset Purchase Agreement, disclosing the existence of the McClarty Action to FTS and furthermore identifying the claim as an excluded liability under the terms of the Asset Purchase Agreement still being finalized between Cableview and FTS.

29. On or about March 1, 2012, one day prior to the scheduled closing date of the Asset Purchase Agreement between Cableview and FTS, Chris Perkins ("Perkins"), a senior operating employee of FTS, sent an email correspondence to both the Cableview and FTS negotiating teams. The email correspondence stated that an FTS employee involved in the Cableview-FTS negotiations received a letter from Time Warner regarding the existence of the

McClarty Action, which was already disclosed to FTS by Cableview. A true and correct copy of the March 1, 2012 email correspondence is attached hereto as **Exhibit "D."**

30. In the letter, Time Warner made demands with respect to assumption of the alleged obligation by FTS as a condition to consent to assignment of Time Warner's Installation Agreement with Cableview to FTS. A true and correct copy of the letter from Time Warner is attached hereto as **Exhibit "E."**

31. These demands were made notwithstanding the fact that Cableview, through First Mercury, had previously denied that it owed Time Warner any duty of indemnification, and that Time Warner failed to provide notice to Cableview of any settlement of the McClarty Action.

32. After frenzied discussions between Time Warner, FTS and Cableview, Time Warner ultimately insisted, as a condition of a written assignment, prior to the close of the Cableview-FTS transaction, that Cableview acquiesce to the addition of language to the Asset Purchase Agreement that would obligate FTS to withhold and remit the sum of $515,000.00 to Time Warner from the Deferred Fixed Compensation due to Cableview under the Asset Purchase Agreement.

33. Time Warner demanded inclusion of such language regarding the as yet unproven and unliquidated settlement in the McClarty Action against Cableview as a condition of Time Warner's consent to assign the Installation Agreement to FTS.[2] A true and correct copy of the Asset Purchase Agreement is attached hereto as **Exhibit "F"**.

---

[2] Upon information and belief, the amount of the settlement in the McClarty Action was approximately $350,000.00, and this was the amount of money that Time Warner originally demanded to be carved out of the Asset Purchase Agreement. However, during the discussions between Time Warner, FTS and Cableview, Time Warner continuously increased the demand, without providing any justification or support to Cableview, until Time Warner was satisfied with the sum of $515,000.00.

7

34. Time Warner's last-minute demand effectively blocked consummation of the Cableview-FTS transaction unless Cableview acquiesced to inclusion of the language mandated by Time Warner. Cableview was forced to acquiesce to Time Warner's demand or lose the transaction it had been negotiating with FTS and, in light of the late stage of the negotiations with FTS, suffer irreparable damages to the ongoing operations.

35. Cableview attempted to resolve the McClarty Action with Time Warner prior to the contractually required distribution date for the Deferred Fixed Compensation.[3] However, in light of the unequal and inequitable bargaining position of Cableview with respect to Time Warner, given the contract language mandated by Time Warner, the issue could not be resolved.

36. Moreover, Time Warner did not ultimately acquiesce to the $515,000.00 they previously demanded as a condition of the consummation of the Cableview-FTS transaction. Rather, only days prior to the payout of the $515,000.00 to Time Warner, Time Warner informed Cableview that the amount of the McClarty Claim was not $515,000.00, but instead was in excess of $600,000.00.

37. Again, Time Warner provided no support or justification to Cableview for its revised demand. In addition to its vehement objection to paying any sum, Cableview objected to any payment over the $515,000.00 that Time Warner had previously sought to extract from the Cableview-FTS transaction.

---

[3] During these discussions between Time Warner and Cableview, specifically on March 8, 2012, Time Warner filed a Complaint against Cableview in the North Carolina General Court of Justice, Superior Court Division, County of Mecklenburg, alleging counts against Cableview for contractual and common law indemnification and for breach of contract allegedly arising from the McClarty Action. However, Time Warner did not serve Cableview with the Complaint. Rather, Time Warner engaged in other efforts to obtain the money it deemed to be owed by Cableview.

38. However, Time Warner refused to provide joint wiring instructions to FTS, as required under the Asset Purchase Agreement, for disbursement of any funds, including additional amounts of the Deferred Fixed Compensation owed to Cableview by FTS under the Asset Purchase Agreement above and beyond the $515,000.00, unless Cableview agreed to pay Time Warner more than the $515,000.00.

39. Thus, Cableview was once again forced to acquiesce to Time Warner's demands or forfeit receipt of money owed to it by FTS, money of which Cableview was in desperate need in order to meet Cableview's financial obligations. As such, Time Warner ultimately extracted $560,000.00 of Cableview's proceeds from the Cableview-FTS transaction.

40. As a result of Time Warner's activity, Cableview has been forced to engage undersigned counsel and is required to pay a reasonable fee for services.

41. All conditions precedent to bringing this action have occurred or been waived.

## COUNT I – BREACH OF CONTRACT

42. Cableview realleges and incorporates the allegations contained in paragraphs 1 through 41 above as though fully set forth herein.

43. Cableview entered into a valid, binding contract, the Installation Agreement, with Time Warner for the rendering of cable installation services.

44. As with all contracts, the Installation Agreement contained an implied covenant of good faith and fair dealing.

45. Time Warner materially breached the Installation Agreement by, without limitation:

   a. Unreasonably withholding its consent to the assignment of the Installation Agreement; and

    b. Failing to adequately notify Cableview of and provide Cableview with an opportunity to participate in settlement negotiations in the McClarty Action.

46. As a result of Time Warner's material breaches of the Agreement, Cableview has been damaged.

WHEREFORE, Cableview demands judgment for damages against Time Warner together with interest, costs and such other and further relief as this Court deems just and proper.

## COUNT II – TORTIOUS INTERFERENCE

47. Cableview realleges and incorporates the allegations contained in paragraphs 1 through 41 above as though fully set forth herein.

48. Prior to the close of the Cableview-FTS transaction on March 2, 2012, Cableview had developed a business relationship with FTS, with the expectation that the relationship would ultimately result in the sale of Cableview's assets to FTS.

49. Time Warner was aware of this relationship between Cableview and FTS through the joint notification of Time Warner, during the due diligence and negotiation periods, of FTS's desire to purchase the assets of Cableview.

50. Time Warner intentionally and unjustifiably interfered with this relationship by blocking the close of the Cableview-FTS transaction by unreasonably withholding consent to assignment of the Installation Agreement to FTS until Cableview was effectively forced to pay money to Time Warner.

51. As a result of Time Warner's tortious interference, Cableview has been damaged.

WHEREFORE, Cableview demands judgment for damages against Time Warner together with interest, costs, and such other and further relief as this Court deems just and proper.

## COUNT III – VIOLATION OF DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FLA. STAT. § 501.211)

52. Cableview realleges and incorporates the allegations contained in paragraphs 1 through 41 above as though fully set forth herein.

53. Pursuant to Florida Statute Section 501.204, as part of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), it is unlawful for any party to engage in unconscionable, unfair or deceptive acts or practices in the conduct of any trade or commerce.

54. Fla. Stat. § 501.211(2) provides that, in any action brought by a person who has suffered a loss as a result of a violation of FDUTPA, such person may recover actual damages, plus attorneys' fees and court costs.

55. As described in the Factual Background, Time Warner has engaged in unethical, unfair and unconscionable behavior with regard to Cableview by utilizing its market dominance and economic power in the cable television industry to extract contract concessions from Cableview in a transaction to which Time Warner was not a party in an effort to effectively strip Cableview of any ability to assert rights and defenses in the McClarty Action.

56. As a result of Time Warner's unfair and deceptive practices, Cableview has been damaged.

WHEREFORE, Cableview requests a declaratory judgment that Time Warner's conduct violates FDUTPA, together with permanent injunctive relief, damages, interest, costs, attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT IV – NEGLIGENT MISREPRESENTATION

57. Cableview realleges and incorporates the allegations contained in paragraphs 1 through 41 above as though fully set forth herein.

58. During the due diligence period, Time Warner, after being notified of the potential purchase of Cableview's assets by FTS, made numerous statements consenting to the Cableview-FTS transaction. Time Warner made these representations knowing that the consummation of the Cableview-FTS transaction would require written assignment of the Installation Agreement.

59. Time Warner's representations that it would agree to the Cableview-FTS transaction were material.

60. Time Warner made these representations: (i) while knowing of their falsity; (ii) without knowledge with regard to their truth or falsity; or (iii) when it should have known of their falsity. Indeed, the representations made to Cableview by Time Warner regarding its consent to assignment were obviously false, and Time Warner made the representations with full knowledge and intent that they would induce Cableview to continue its negotiations with FTS.

61. Cableview justifiably relied upon Time Warner's representations in proceeding with further negotiations with FTS that ultimately resulted in imminent consummation of the transaction.

62. As a result of Time Warner's representations, Cableview suffered damages, as it was forced to agree to language imposed upon it by Time Warner, which effectively stripped Cableview of any ability to assert rights and defenses in the McClarty Action and ultimately cost $560,000.00.

WHEREFORE, Cableview demands judgment for damages against Time Warner, together with interest, costs, and such other and further relief as this Court deems just and proper.

Respectfully submitted this 21st day of March, 2013.

                                            BRENNAN, MANNA & DIAMOND, P.L.

                                            By_____
                                                John D. "Jack" Webb
                                                Cody L. Westmoreland
                                                Florida Bar Number: 51871
                                                Florida Bar Number: 57927
                                                800 West Monroe Street
                                                Jacksonville, Florida   32202
                                                (904) 366-1500
                                                (904) 355-1501 (facsimile)

                                                *Attorneys for Plaintiff*