**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| CABLEVIEW COMMUNICATIONS OF JACKSONVILLE, INC., a Florida corporation, )<br><br>Plaintiff, )<br><br>v. )<br><br>TIME WARNER CABLE SOUTHEAST LLC a/k/a TIME WARNER CABLE ENTERPRISES LLC f/k/a TIME WARNER ENTERTAINMENT COMPANY, L.P. a/k/a TIME WARNER ENTERTAINMENT-ADVANCE/NEWHOUSE PARTNERSHIP d/b/a TIME WARNER CABLE, )<br><br>Defendant. )<br>_____ ) | Case No.: 3:13-cv-306-J-34 JRK |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO TIME WARNER'S MOTION FOR TERMINATING SANCTIONS

Plaintiff, Cableview Communications of Jacksonville, Inc. ("Cableview"), by and through its undersigned counsel, hereby responds to Defendant Time Warner Cable Southeast, LLC's Dispositive Motion for Terminating Sanctions and Monetary Sanctions Due to Plaintiff Cableview's Fraud on the Court with Incorporated Memorandum of Law (the "Motion") (ECF No. 192).

### INTRODUCTION

Cableview Communications of Jacksonville, Inc. filed suit against Time Warner Cable Southeast, LLC ("Time Warner") on March 21, 2013 seeking to recover $560,000 that Time Warner tortuously extracted from a corporate asset sale that Cableview had previously negotiated with FTS/Unitek. Time Warner's purported justification for its actions, as stated in its defenses

and counter claims, was that Cableview owed it a duty of indemnification for money that Time Warner allegedly paid to settle a third-party negligence suit against Duke Power brought by a former employee of Cableview, a suit to which neither Time Warner nor Cableview was ever a party. Cableview asserts that Time Warner knew at the time that it took Cableview's money, and has known throughout the course of this litigation, that Cableview did not owe it a duty of indemnification and that its justification for its acts was baseless.

Discovery in this action has been long and exhaustive and has clearly revealed the illegality of Time Warner's behavior. Indeed, it was elicited during discovery that Time Warner entered into an agreement with Duke Power where Time Warner agreed to defend and indemnify Duke Power *without reservation* in exchange for Duke Power waiving any third-party claims against Time Warner, in as much as Time Warner had been alleged to have been culpable. See highlighted portions of Deposition of Brian Williams (attached as **Exhibit "1"**) and Brian Williams Email (attached as **Exhibit "2"**).[1]  Time Warner and Duke Power entered into this agreement without involving Cableview. See id. Time Warner did so with the knowledge that no claims in the underlying lawsuit brought by Cableview's former employee against Duke Power, the operative document for triggering any duty of defense or indemnification, were directed to Time Warner or Cableview, but were directed solely to the negligence of Duke Power.[2]  Despite this, Time Warner has asserted since its September 23, 2010 tender of the McLarty action to Cableview, that Cableview must make it whole for damages incurred through Time Warner's contractual relationship with a third-party, Duke Power, notwithstanding the glaring absence of any such obligation in the indemnification language between Time Warner and Cableview.

---

[1] The 2004 Installation Agreement does not permit indemnification "in the case of negligence by Time Warner."
[2] Indeed, Time Warner had previously litigated an almost identical legal and factual situation. See Time Warner, Inc. v. St. Paul Fire and Marine Insurance Company, 633 N.W. 2d 640 (WI App 2001).

As this case has progressed, Time Warner has attempted to seize on issues that might legally derail Cableview in its efforts to recover its money, including, but not limited to, Article III standing. Time Warner asserts that the $560,000 that Cableview did not receive because of Time Warner's interference, would not been received by Cableview, in any event, but rather, would have gone to an affiliated entity of Cableview, Cableview Communications of Florida, Inc. Time Warner is essentially claiming "no harm, no foul" for its actions, that Cableview would not, and has not, suffered any damages and therefore lacks standing.

In attempting to support its standing defense, Time Warner raised questions as to the allocation of proceeds from the Asset Purchase Agreement, inferring that the proceeds were not allocated to Cableview and therefore neither would the $560,000 have been allocated to Cableview. Therefore, Time Warner asserts that Cableview lacked standing. In Time Warner's Motion, it addresses certain interrogatory responses on the allocation issue, as well as certain Compass Bank records, but fails to address other discovery received by Time Warner.

For example, Time Warner requested production of financial records from Cableview's accountant arguing that such documents were "directly relevant" to the allocation issue. See January 20, 2015 correspondence (attached as **Exhibit "3"**). With regard to these documents, as well as other discovery issues, Cableview conferred with Time Warner via correspondence on six separate occasions, and Cableview ultimately produced these documents to Time Warner on March 13, 2015, along with an updated privilege log on March 18, 2015, identifying the documents with redactions of the accountant's notes and clearly identifying Cableview's accountant as John R. "Jack" Leone.[3]

---

[3] Indeed, with regard to the documents produced from Mr. Leone, Time Warner alleges in footnote 15 of its Motion that the affidavits filed with the Court from Mr. Leone and Mr. Wilson certifying those documents should be stricken, pursuant to a "forthcoming motion to strike." Cableview is attempting to confer with Time Warner on

3

Moreover, on January 27, 2015, Cableview conferred with Time Warner and explained that it was not in a possession of an Exhibit "A" to the Asset Purchase Agreement, which related to the allocation of proceeds. Cableview noted that Time Warner had failed to explain why it felt that Cableview's 2012 tax return would serve as an acceptable replacement for the lack of Exhibit "A", but that it would, in any event, produce Cableview's tax return. See correspondence attached as **Exhibit "5"**.[4]

Subsequent to the production of these documents and the close of discovery, Time Warner, pursuant to the Court's Order dated September 4, 2015, obtained records from Compass Bank via a third-party subpoena that supplemented bank records Time Warner obtained pursuant a previous third-party subpoena to Compass Bank during discovery. As the Court is well aware, it is the bank records received by Time Warner pursuant to the second subpoena, as well as Cableview's Amended Responses to Time Warner's Second Interrogatories that Time Warner, in large part, relies upon for its claim that Cableview and undersigned counsel have committed a fraud on the Court.[5] Time Warner asserts that because proceeds from the asset purchase flowed into a bank account in the name of Cableview Communication of Florida, that, notwithstanding the financial documents and earlier bank records produced to Time Warner, and the Second Amended Responses to Time Warner's Second Interrogatories, Cableview cannot establish an

---

this issue raised substantively in Time Warner's instant Motion. See Email Correspondence attached as **Exhibit "4"**.

[4] Cableview represented to the Court in its Amended Reply to Defendant's Supplemental Brief in Support of its Motion to Strike (Doc. No. 188) that Cableview was unable to locate the Cableview tax return for 2012 and it was subsequently produced to Time Warner, out of an abundance of caution, on September 22, 2015. However, after a more thorough search, Cableview was able to locate this document it its production, as it was produced to Time Warner on February 6, 2012 as CVC-TW 008793. Cableview notes however that its 2012 tax return was not entered as an exhibit or questioned in Mr. Schieszer's first Rule 30(b)(6) deposition, nor his second Rule 30(b)(6) deposition on the allocation issue.

[5] Time Warner ignores Cableview's Second Amended Responses to Time Warner's Second Interrogatories. Indeed, in footnote 8 of Time Warner's Motion, it asserts that they are "legally irrelevant" without explaining why.

interest in that money that Time Warner extracted from Cableview. [6]  Time Warner argues that Cableview and undersigned counsel have asserted argument and evidence in an effort to commit a fraud on this Court.  Time Warner's arguments have no merit.

## MEMORANDUM OF LAW

### Legal Standard

In order to establish fraud on the Court, the opposing party must provide clear and convincing evidence that the plaintiff "has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of opposing party's claim or defense." Bryant v. Troutman, 2006 WL 1640484 * 1(M.D. Fla. 2006) (quoting Jacob v. Henderson, 840 So.2d 1167, 1169 (Fla. 2d DCA 2003)(citing Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998)(quoting Aounde v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989).

The fact that a party may dispute another party's interpretation of facts is not grounds for dismissal for fraud. Id.  Indeed, "dismissal is not proper "unless the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct."" Idearc Media Corp. v. Kimsey & Associates, P.A., 2009 WL 928556 *3 (M.D. Fla.

---

[6] Revealing the fallacy of Time Warner's argument are Time Warner's bank records. Time Warner alleges that the money it allegedly paid to Mr. McLarty and in defense of Duke Power, was paid by ESIS, a third-party claims administrator acting on its behalf, and that Time Warner reimbursed ESIS.  Significantly, the bank records that Time Warner produced in support of its position that it reimbursed ESIS are for an account in the name of Time Warner Entertainment Company, LP, not Time Warner Entertainment-Advance/Newhouse Partnership. As such, if Cableview lacks standing to assert its claims against Time Warner because the money flowed into a non-Cableview bank account, Time Warner similarly lacks standing to assert any defenses and counterclaims because money reimbursing ESIS flowed out of a non-Time Warner bank account. See Bank Records attached as **Exhibit "6"**.

2009) (quoting <u>Zocaras v. Castro</u>, 465 F.3d 479, 483 (11th Cir. 2006)(quoting <u>Goforth v. Owens</u>, 766 F.2d 1533, 1535 (11th Cir. 1985).

### **Argument**

Time Warner first asserts that Cableview has known since inception of its suit against Time Warner that it had entered into a settlement agreement with Time Warner that precluded its claims against Time Warner. It is obvious that Cableview disagrees with Time Warner with regard to this factual matter that is currently before the Court pursuant to Cableview's Motion for Partial Summary Judgment.

Time Warner's 'settlement' discussion relies upon how money flowed into bank accounts and mirrors its standing argument. In any event, Time Warner's discussion ignores key facts with regard to the flow of money paid pursuant to the Asset Purchase Agreement. Indeed, the loan that Time Warner references, that was paid off pursuant to the joint wiring instructions, was originally in the name of Cableview and Cableview was the grantor of the security interest for that loan. Similarly, pursuant to the joint wiring instructions, the money was wired for the benefit of the Cableview entities. Time Warner is well aware of these facts as they have been exhaustively briefed. Yet, Time Warner inexplicably chooses to ignore them.

With regard to Time Warner's further argument in support of its Motion, that Cableview allegedly admitted that it was not entitled to the $560,000, Time Warner goes to great lengths to create confusion and an inference of ill-intent on the part of Cableview with regard to discovery that was conducted on the allocation issue. Time Warner requested that Cableview produce financial records that it asserted were relevant to the allocation issue. After much communication, Cableview produced such financial documents. It was these documents that James Schieszer relied upon in preparing Cableview's Second Amended Responses to Time

Warner's Second Interrogatories as well as the affidavit executed by Mr. Schieszer that Time Warner alleges constitutes perjury. In addition, Cableview produced tax returns for Cableview and Cableview Communication of Florida, Inc.

Cableview produced financial records from its accountant as requested by Time Warner; Cableview prepared interrogatory responses in reliance upon those records that, it has conceded repeatedly, were modified over the course of discovery in an effort to correct and clarify; Time Warner received production of multiple sets of bank records from Compass Bank. However, Time Warner chooses to rely on one set of bank records that it asserts proves that the affidavit of James Shieszer was perjured while ignoring other evidence.[7]

Cableview has worked diligently over the course of this protracted litigation in an effort to recover money that Time Warner took from it with no justification. Cableview's efforts have been met with aggressive, vexatious opposition by Time Warner.

Time Warner's attempts to portray communication from counsel regarding issues such as accusations of perjury and Time Warner's policy with regard to its treatment of vendors[8] as bizarre or sarcastic are unfounded. Similarly, the briefs submitted in response to Time Warner's various pleadings addressing its standing argument bely any assertion that counsel has not taken Time Warner's theories, although unfounded, seriously, thoroughly analyzing and responding to Time Warner's assertions on behalf of Cableview.

---

[7] Indeed, Time Warner's refusal to take notice of the existence of financial accounting principles and Cableview's assertions with regard to the movement of money through intercompany accounts is perplexing give Time Warner's similar reliance on intercompany accounting as is evidenced by its own filings with the Securities and Exchange Commission. Indeed, page 28 of the Form 10-Q for Time Warner Cable Inc. for the quarterly period ended June 30, 2015 addressed consolidation of financial statements and states "(i)ntercompany accounts and transactions between consolidated companies have been eliminated in consolidation." (See page excerpts from 10-Q attached as **Exhibit "7"**).

[8] Time Warner's policy that addresses treatment of "service providers" and the definition of "vendor" is directly relevant to this action. See Email Chain from Britt White, Assistant to Tony Sieiro on January 31, 2015 requesting information for new vendor, attached as **Exhibit "8"**.

Rather, Time Warner is utilizing "sanction practice" as an oppressive litigation tactic. However, whatever tactic Time Warner may choose to employ, that tactic cannot establish that Cableview's diligent assertion of its claims somehow constitutes sanctionable behavior, nor can Time Warner meet its burden, pursuant to established case law, for the imposition of terminating sanctions by this Court or the levying of attorney's fees against Cableview or its undersigned counsel. No fraud has occurred.

## CONCLUSIONS

For the reasons asserted herein, Cableview respectfully requests that Time Warner's Motion for Terminating Sanctions and Monetary Sanctions Due to Plaintiff Cableview's Fraud on the Court with Incorporated Memorandum of Law be denied.

Respectfully submitted this 16th day of November, 2015.

**KELLEY KRONENBERG, P.A.**

*s/ John D. Webb*
John D. "Jack" Webb
Florida Bar Number: 051871
1200 Riverplace Boulevard, Suite 201
Jacksonville, Florida 32207
Telephone: (904) 399-1220
Facsimile: (904) 399-1594
Primary Email:
jwebb@kelleykronenberg.com
Secondary Email:
arichey@kelleykronenberg.com
rharrison@kelleykronenberg.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on this 16th day of November, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to:

Ryan Bollman, Esq.
Stephanie McAlister, Esq.
WARGO & FRENCH, LLP
201 South Biscayne Boulevard, Suite 1000
Miami, FL 33131
rbollman@wargofrench.com
smcalister@wargofrench.com

Mark L. Block, Esq.
WARGO & FRENCH, LLP
1888 Century Park East, Suite 1520
Los Angeles, CA 90067
mblock@wargofrench.com

Michael French, Esq.
Ryan D. Watstein, Esq.
WARGO & FRENCH, LLP
999 Peachtree St. NE, 26th Floor
Atlanta, GA 30309
mfrench@wargofrench.com
rwatstein@wargofrench.com

*Attorneys for Defendants*

*s/ John D. Webb*
John D. "Jack" Webb
Florida Bar Number: 051871
1200 Riverplace Boulevard, Suite 201
Jacksonville, Florida 32207
Telephone: (904) 399-1220
Facsimile: (904) 399-1594

*Attorney for Plaintiff*