# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

CABLEVIEW COMMUNICATIONS OF JACKSONVILLE, INC., a Florida corporation,

    Plaintiff,

v.

TIME WARNER ENTERTAINMENT-ADVANCE/NEWHOUSE PARTNERSHIP d/b/a TIME WARNER CABLE and TIME WARNER CABLE SOUTHEAST LLC, d/b/a TIME WARNER CABLE

    Defendants.

Case No.: 3:13-cv-306-J-34JRK

## SECOND AMENDED COMPLAINT

Plaintiff, CABLEVIEW COMMUNICATIONS OF JACKSONVILLE, INC. ("Cableview"), sues Defendants, TIME WARNER ENTERTAINMENT-ADVANCE/NEWHOUSE PARTNERSHIP d/b/a TIME WARNER CABLE and TIME WARNER CABLE SOUTHEAST LLC d/b/a TIME WARNER CABLE and states as follows:

## PARTIES, JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

2. Cableview is a Florida corporation with its principal place of business in Florida.

3. Time Warner Entertainment-Advance/Newhouse Partnership d/b/a Time Warner Cable ("TWEAN") is a New York general partnership. The partners of TWEAN are Time

Warner Cable Enterprises, LLC, a Delaware limited liability company, and Advance/Newhouse Partnership, a New York general partnership. The members of Time Warner Cable Enterprises, LLC are Time Warner Cable, Inc., a Delaware corporation with its principal place of business in New York, and Time Warner NY Cable, LLC, a Delaware limited liability company. The sole member of Time Warner NY Cable, LLC is TW NY Cable Holding, Inc., a Delaware corporation with its principal place of business in New York. The partners of Advance/Newhouse Partnership are Newhouse Broadcast Corporation and Advance Publications, Inc., both New York corporations with their principal places of business in New York.

4. Time Warner Cable Southeast LLC d/b/a Time Warner Cable ("TWC Southeast") is a Delaware limited liability company. The members of TWC Southeast are Time Warner Cable Enterprises, LLC and Time Warner Entertainment-Advance/Newhouse Partnership, whose citizenships are alleged in the previous paragraph and incorporated by reference.

5. Upon information and belief, on September 30, 2012, TWEAN underwent an internal corporate restructuring. *See Decl. of Rosenberg, Rutherford Elec. Membership Corp. v. Time Warner Ent.-Advance/Newhouse P'ship dba Time Warner Cable*, No. 13-CVS-231, N.C. Super., ¶ 3 (July 2, 2013)(attached as **Exhibit "A"**). Time Warner Cable, Inc. is the parent company of TWEAN and TWC Southeast. *Id*. ¶ 2.

6. As a result of the restructuring, and beginning in October 2012, TWC Southeast became the operating subsidiary of TWEAN for purposes of cable operations doing business in North Carolina. *Id*. ¶ 4.

7. As part of the restructuring, TWEAN transferred all of it rights, obligations and liabilities relating to cable operations in North Carolina to TWC Southeast, effective September 30, 2012. *Id.* ¶ 6.

8. As of September 30, 2012, TWC Southeast owns the North Carolina cable operations assets previously held by TWEAN, and all cable operations and management functions previously performed by TWEAN have shifted to TWC Southeast. *Id.* ¶ 7.

9. Venue is properly vested in this Court under 28 U.S.C. § 1391, as the causes of action against TWEAN and TWC Southeast accrued in Duval County, Florida.

## FACTUAL BACKGROUND

### Cableview, TWEAN, Duke Power: The McLarty Action

10. At all times relevant to the matters alleged herein, Cableview was engaged in the business of cable television installation—offering video, modem and telephone installation services, multi-dwelling unit installation services, and drop bury and construction services for cable television companies in various markets throughout Florida, North Carolina, Ohio, Texas and Virginia.

11. Cableview entered into an agreement with TWEAN on or about July 19, 2004 to provide cable television installation services in the Greensboro, North Carolina area (the "Installation Agreement"). A true and correct copy of the Installation Agreement is attached hereto as **Exhibit "B."**

12. James McLarty ("McLarty") was employed by Cableview as a cable installation technician in the Greensboro, North Carolina area, providing services to TWEAN pursuant to the Installation Agreement.

13. On or about June 18, 2008, McLarty was injured when the utility pole upon which he was stringing cable television line collapsed. McLarty filed a worker's compensation claim against Cableview, which Cableview, in turn, tendered to its worker's compensation insurance carrier.

14. The worker's compensation claim made by McLarty against Cableview was settled by Cableview's worker's compensation insurance carrier.

15. Subsequent to the settlement between McLarty and Cableview, on July 21, 2010, McLarty filed an action for negligence and negligence *per se* against Duke Energy Carolinas, LLC ("Duke Power"), in the General Court of Justice, Superior Court Division for Durham County, North Carolina (the "McLarty Action").

16. Duke Power was the owner of the subject utility pole and had previously granted access for use of the pole to TWEAN pursuant to a utility pole attachment agreement between Duke Power and TWEAN. In McLarty's Complaint, he alleged that Duke Power was responsible for the condition of and for maintenance of the utility pole involved in his injuries.

17. Upon information and belief, Duke Power tendered the McLarty Action to TWEAN for defense and indemnification pursuant to the utility pole attachment agreement, and TWEAN voluntarily accepted the tender from Duke Power.

18. By correspondence dated September 23, 2010, counsel tendered the McLarty Action to Cableview on behalf of TWEAN for defense and indemnification allegedly pursuant to the Installation Agreement. In addition to making the tender directly to Cableview, TWEAN also made the tender to First Mercury Insurance Company ("First Mercury") allegedly pursuant to the contract of insurance providing for general liability coverage issued by First Mercury to Cableview (the "Policy"), naming TWEAN as an additional insured.

19. Upon receipt of the September 23, 2010 correspondence by Cableview on September 27, 2010, Cableview immediately forwarded the same to Brown & Brown of Florida, Inc. ("Brown & Brown"), Cableview's insurance agent. Brown & Brown, in turn, forwarded the same to First Mercury for defense and coverage review.

20. By correspondence dated October 28, 2010, First Mercury denied defense and coverage under the Policy on behalf of both Cableview and TWEAN, stating that the McLarty Action did not fall within Cableview's contractual indemnification obligations under the Installation Agreement. A true and correct copy of the October 28, 2010 correspondence is attached hereto as **Exhibit "C."**

21. Upon information and belief, after acceptance of the tender from Duke Power and receipt of the letter of rejection of coverage from First Mercury, TWEAN voluntarily defended Duke Power and ultimately settled the McLarty Action on behalf of Duke Power without any additional demand or notice to Cableview.

22. Indeed, TWEAN had no further communication with Cableview regarding the McLarty Action until February of 2012.

**The FTS USA, LLC Transaction**

23. FTS USA, LLC ("FTS") is a Delaware limited liability company with its principal place of business in Blue Bell, Pennsylvania. Like Cableview, FTS is engaged in the business of cable television installation services for cable television providers.

24. Late in 2011, FTS contacted the officers of Cableview regarding the possibility of acquiring Cableview and its affiliated companies. Thereafter, FTS and Cableview executed a series of Letters of Intent that outlined the evolving terms of the transaction that would ultimately be incorporated into a final Asset Purchase Agreement.

25. Additionally, during this period of time, FTS conducted its due diligence investigation, which included asset examination and visits to Cableview's field operations.

26. Early in 2012, FTS and Cableview jointly informed TWEAN of the possibility of FTS acquiring Cableview. Indeed, the Field Installation Services Agreement (attached as **Exhibit "D"**) that was executed between Cableview Communications of Carolina, Inc. (one of the corporate sellers under the Asset Purchase Agreement) and TWEAN dated July 1, 2011, provided that written consent was required for any assignment of the duties or obligations thereunder. *See* Exhibit D, ¶ 15.10. At that time, TWEAN gave its verbal consent to the Cableview-FTS transaction.[1]

27. Based upon TWEAN's clear expression of support for the Cableview-FTS transaction, Cableview continued to negotiate the final terms of the Asset Purchase Agreement with FTS.

28. Ultimately, FTS and Cableview entered into an Asset Purchase Agreement dated March 2, 2012, through which FTS acquired substantially all of the assets of Cableview, including, but not limited to, Cableview's installation agreements with cable providers such as TWEAN.

29. As consideration for the purchase of Cableview's assets, FTS agreed to pay Cableview $500,000.00 at the close of the transaction and an additional $1,900,000.00 within five business days of FTS's consummation of appropriate financing (the "Deferred Fixed

---

[1] Also at that time, TWEAN made Cableview aware of the fact that FTS had previously attempted to acquire another of TWEAN's service providers. By virtue of that prior unsuccessful transaction, to which TWEAN consented, FTS was a known commodity to TWEAN and TWEAN was comfortable with FTS assuming Cableview's responsibilities.

6

Compensation"), with additional potential consideration paid to Cableview based upon revenues and profit generated by the Cableview assets acquired by FTS.

**TWEAN's Actions Prior to the Close of the Cableview-FTS Transaction**

30. During the due diligence and negotiation periods, but prior to the final execution of the Asset Purchase Agreement between Cableview and FTS, TWEAN engaged in settlement discussions with McLarty and ultimately settled the McLarty Action on behalf of Duke Power without any notice to Cableview.

31. Subsequent to settlement with McLarty, on February 17, 2012, TWEAN filed an Application and Order Extending Time to File Complaint against Cableview (the "Application") allegedly pursuant to Rule 3 of the North Carolina Rules of Civil Procedure. A true and correct copy of the Application is attached hereto as **Exhibit "E."** TWEAN forwarded to Cableview the Application and subpoenas issued on February 17, 2012 via facsimile.

32. The Application granted TWEAN leave to file a complaint against Cableview until March 8, 2012, for alleged violations of Cableview's contractual indemnification obligations in connection with the McLarty Action.

33. The Application filed by TWEAN was the first communication Cableview received from TWEAN regarding indemnification obligations under the Installation Agreement in connection with the McLarty Action since the September 23, 2010 correspondence that Cableview forwarded to Brown & Brown and ultimately to First Mercury.

34. After receipt of the Application, Cableview, pursuant to its pre-closing disclosure obligations to FTS, amended the addendums to the Asset Purchase Agreement, disclosing the existence of the McLarty Action to FTS and furthermore identifying the claim as an excluded

liability under the terms of the Asset Purchase Agreement still being finalized between Cableview and FTS.

35. On or about March 1, 2012, one day prior to the scheduled closing date of the Asset Purchase Agreement between Cableview and FTS, Chris Perkins ("Perkins"), a senior operating employee of FTS, sent email correspondence to both the Cableview and FTS negotiating teams. The email correspondence stated that an FTS employee involved in the Cableview-FTS negotiations received a letter regarding the existence of the McLarty Action, which was already disclosed to FTS by Cableview. A true and correct copy of the March 1, 2012 email correspondence is attached hereto as **Exhibit "F."**

36. In the letter, TWEAN made demands with respect to assumption of the alleged obligation by FTS as a condition to consent to assignment of TWEAN and its affiliated entities' contract(s) to FTS. A true and correct copy of the letter is attached hereto as **Exhibit "G."**

37. These demands were made notwithstanding the fact that Cableview, through First Mercury, had previously denied that it owed any duty of indemnification, and that TWEAN failed to provide notice to Cableview of any settlement of the McLarty Action.

38. After frenzied discussions between TWEAN, FTS and Cableview, TWEAN ultimately insisted, as a condition of a written assignment, prior to the close of the Cableview-FTS transaction, that Cableview acquiesce to the addition of language to the Asset Purchase Agreement that would obligate FTS to withhold and remit the sum of $515,000.00 to TWEAN from the Deferred Fixed Compensation due to Cableview under the Asset Purchase Agreement.

39. TWEAN demanded inclusion of such language regarding the as yet unproven and unliquidated settlement in the McLarty Action against Cableview as a condition of consent to

assign TWEAN's contract(s) to FTS.[2] A true and correct copy of the Asset Purchase Agreement is attached hereto as **Exhibit "G"**.

40. TWEAN's last-minute demand effectively blocked consummation of the Cableview-FTS transaction unless Cableview acquiesced to inclusion of the language mandated by TWEAN. Cableview was forced to acquiesce to TWEAN's demand or lose the transaction it had been negotiating with FTS and, in light of the late stage of the negotiations with FTS, suffer irreparable damages to the ongoing operations.

41. Cableview attempted to resolve the McLarty Action with TWEAN prior to the contractually required distribution date for the Deferred Fixed Compensation.[3] However, in light of the unequal and inequitable bargaining position of Cableview with respect to TWEAN, given the contract language mandated by TWEAN, the issue could not be resolved.

42. Moreover, TWEAN did not ultimately acquiesce to the $515,000.00 they previously demanded as a condition of the consummation of the Cableview-FTS transaction. Rather, only days prior to the payout of the $515,000.00, TWEAN informed Cableview that the amount of the McLarty Claim was not $515,000.00, but instead was in excess of $600,000.00.

---

[2] Upon information and belief, the amount of the settlement in the McLarty Action was approximately $350,000.00, and this was the amount of money that TWEAN originally demanded to be carved out of the Asset Purchase Agreement. However, during the discussions between TWEAN, FTS and Cableview, TWEAN continuously increased the demand, without providing any justification or support to Cableview, until TWEAN was satisfied with the sum of $515,000.00.

[3] During these discussions between TWEAN and Cableview, specifically on March 8, 2012, a Complaint against Cableview was filed in the North Carolina General Court of Justice, Superior Court Division, County of Mecklenburg by TWEAN and Time Warner Cable, Inc., alleging counts against Cableview for contractual and common law indemnification and for breach of contract allegedly arising from the McLarty Action. However, the Complaint was not served on Cableview. Rather, TWEAN engaged in other efforts to obtain the money it deemed to be owed by Cableview.

9

43. Again, TWEAN provided no support or justification to Cableview for its revised demand. In addition to its vehement objection to paying any sum, Cableview objected to any payment over the $515,000.00 that TWEAN had previously sought to extract from the Cableview-FTS transaction.

44. However, TWEAN refused to provide joint wiring instructions to FTS, as required under the Asset Purchase Agreement, for disbursement of any funds, including additional amounts of the Deferred Fixed Compensation owed to Cableview by FTS under the Asset Purchase Agreement above and beyond the $515,000.00, unless Cableview agreed to pay TWEAN more than the $515,000.00.

45. Thus, Cableview was once again forced to acquiesce to TWEAN's demands or forfeit receipt of money owed to it by FTS, money of which Cableview was in desperate need in order to meet Cableview's financial obligations. As such, TWEAN ultimately extracted $560,000.00 of Cableview's proceeds from the Cableview-FTS transaction.

46. As a result of TWEAN's activity, Cableview has been forced to engage undersigned counsel and is required to pay a reasonable fee for services.

47. All conditions precedent to bringing this action have occurred or been waived.

## COUNT I – TORTIOUS INTERFERENCE

48. Cableview realleges and incorporates the allegations contained in paragraphs 1 through 47 above as though fully set forth herein.

49. Prior to the close of the Cableview-FTS transaction on March 2, 2012, Cableview had developed a business relationship with FTS, with the expectation that the relationship would ultimately result in the sale of Cableview's assets to FTS.

50. TWEAN was aware of this relationship between Cableview and FTS through the joint notification of TWEAN, during the due diligence and negotiation periods, of FTS's desire to purchase the assets of Cableview.

51. TWEAN intentionally and unjustifiably interfered with this relationship by blocking the close of the Cableview-FTS transaction by unreasonably withholding consent to assignment of the Field Installation Services Agreement to FTS until Cableview was effectively forced to pay money to TWEAN.

52. TWEAN had actual knowledge of the wrongfulness of its conduct, actively and knowingly participated in the conduct, and was well aware of the severe economic damage it was inflicting upon Cableview. However, despite this knowledge, TWEAN intentionally and maliciously interfered with Cableview's business relationship with FTS simply because TWEAN possessed the market dominance and economic power in the cable television industry that enabled it to act with unrestrained impunity.

53. As a result of TWEAN's tortious interference, Cableview has been damaged.

WHEREFORE, Cableview demands judgment for damages, both compensatory and punitive, against TWEAN and TWC Southeast together with interest, costs, and such other and further relief as this Court deems just and proper.

### COUNT II – VIOLATION OF DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FLA. STAT. § 501.211)

54. Cableview realleges and incorporates the allegations contained in paragraphs 1 through 47 above as though fully set forth herein.

55. Pursuant to Florida Statute Section 501.204, as part of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), it is unlawful for any party to engage in unconscionable, unfair or deceptive acts or practices in the conduct of any trade or commerce.

56. Fla. Stat. § 501.211(2) provides that, in any action brought by a person who has suffered a loss as a result of a violation of FDUTPA, such person may recover actual damages, plus attorneys' fees and court costs.

57. As described in the Factual Background, TWEAN has engaged in unethical, unfair and unconscionable behavior with regard to Cableview by utilizing its market dominance and economic power in the cable television industry to extract contract concessions from Cableview in a transaction to which TWEAN was not a party in an effort to effectively strip Cableview of any ability to assert rights and defenses in the McLarty Action.

58. As a result of TWEAN's unfair and deceptive practices, Cableview has been damaged.

WHEREFORE, Cableview requests a declaratory judgment that TWEAN's conduct violates FDUTPA, together with permanent injunctive relief, damages, interest, costs, attorneys' fees, and such other and further relief against TWEAN and TWC Southeast as this Court deems just and proper.

### COUNT III – NEGLIGENT MISREPRESENTATION

59. Cableview realleges and incorporates the allegations contained in paragraphs 1 through 47 above as though fully set forth herein.

60. During the due diligence period, TWEAN, after being notified of the potential purchase of Cableview's assets by FTS, made numerous statements consenting to the Cableview-FTS transaction. TWEAN made these representations knowing that the consummation of the Cableview-FTS transaction would require written assignment of Cableview's contracts with TWEAN.

61. TWEAN's representations that it would agree to the Cableview-FTS transaction were material.

62. TWEAN made these representations: (i) while knowing of their falsity; (ii) without knowledge with regard to their truth or falsity; or (iii) when it should have known of their falsity. Indeed, the representations made to Cableview by TWEAN regarding its consent to assignment were obviously false, and TWEAN made the representations with full knowledge and intent that they would induce Cableview to continue its negotiations with FTS.

63. Cableview justifiably relied upon TWEAN's representations in proceeding with further negotiations with FTS that ultimately resulted in imminent consummation of the transaction.

64. TWEAN's representations were reckless and made without any concern or regard for the damage that might result to Cableview and were therefore grossly negligent.

65. As a result of TWEAN's representations, Cableview suffered damages, as it was forced to agree to language imposed upon it by TWEAN, which effectively stripped Cableview of any ability to assert rights and defenses in the McLarty Action and ultimately cost $560,000.00.

WHEREFORE, Cableview demands judgment for damages, both compensatory and punitive, against TWEAN and TWC Southeast, together with interest, costs, and such other and further relief as this Court deems just and proper.

Respectfully submitted this 29th day of January, 2016.

                                          **KELLEY KRONENBERG, P.A.**

                                          *s/ John D. Webb*
                                          John D. "Jack" Webb
                                          Florida Bar Number: 051871

1200 Riverplace Boulevard, Suite 201
Jacksonville, Florida 32207
Telephone: (904) 399-1220
Facsimile: (904) 399-1594
Primary Email:
jwebb@kelleykronenberg.com
Secondary Email:
arichey@kelleykronenberg.com
rharrison@kelleykronenberg.com


*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on this 29th day of January, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to:

Ryan Bollman, Esq.
Stephanie McAlister, Esq.
WARGO & FRENCH, LLP
201 South Biscayne Boulevard, Suite 1000
Miami, FL 33131
rbollman@wargofrench.com
smcalister@wargofrench.com

Mark L. Block, Esq.
WARGO & FRENCH, LLP
1888 Century Park East, Suite 1520
Los Angeles, CA 90067
mblock@wargofrench.com

Michael French, Esq.
Ryan D. Watstein, Esq.
WARGO & FRENCH, LLP
999 Peachtree St. NE, 26th Floor
Atlanta, GA 30309
mfrench@wargofrench.com
rwatstein@wargofrench.com

*Attorneys for Defendants*

*s/ John D. Webb*
John D. "Jack" Webb
Florida Bar Number: 051871
1200 Riverplace Boulevard, Suite 201
Jacksonville, Florida 32207
Telephone: (904) 399-1220
Facsimile: (904) 399-1594

*Attorney for Plaintiff*